Filed 5/12/14  P. v. El Mir CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADAM EL MIR,<br><br>    Defendant and Appellant. | D063375<br><br><br><br>(Super. Ct. No. SCD242688) |


APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.


Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Adam El Mir appeals a judgment entered after his jury convictions of receiving stolen property (count 3; Pen. Code, § 496, subd. (a)),[1] burglary (count 4; § 459), and driving under the influence of drugs (count 5; Veh. Code, § 23152, subd. (e)).  On appeal, he contends the trial court erred by denying his *Batson*/*Wheeler*[2] motion.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2012, Juliana Morse took her 1997 white Jeep Grand Cherokee to an auto body shop for repairs in preparation to sell it.  She provided the shop's manager, Aaron Nguyen (Aaron),[3] with the keys.  After the repairs were complete, the vehicle remained at the auto body shop because Morse and an employee of the shop, Thuan Nguyen (Thuan), entered into negotiations for Morse to sell the Jeep to Thuan.

In August 2012, Thuan parked the Jeep in a parking lot across the street from the auto body shop.  The lot was surrounded by a six-foot tall fence with a locked gate.  At the end of the day, Thuan gave the keys back to Aaron, who locked the keys in his office.  However, the next morning the Jeep was gone.  After confirming Morse did not have the vehicle and that the keys were still in the office, Aaron called the police and reported the vehicle stolen.

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

[2]     *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.

[3]     We use first names to differentiate between Aaron Nguyen and Thuan Nguyen, and intend no disrespect.

Several days later, Lepenegs Araya, a part-time cook for Muzita Bistro, arrived at the restaurant around 6:00 a.m. When she arrived, she noticed the back door was unlocked and slightly open. Inside, she found the restaurant had been ransacked, the cash drawer from the register and paychecks were missing, and two half-empty bottles were on the counter and floor. A police officer dispatched to the scene around 7:05 a.m. determined the front door had been pried open. In addition, the officer found latent fingerprints on the window as well as on the half-empty bottles. Subsequent testing of the fingerprints revealed El Mir's DNA.

That same day, police responded to a dispatch call about a vehicle stuck in the grass at the bottom of an embankment. When the officers arrived, they found a white Jeep Grand Cherokee down an embankment with El Mir pacing back and forth next to it. The officers noted he appeared to be under the influence of methamphetamine because he appeared "a little bit amped up" and spoke in rapid, slurred speech, mumbled his words and was fidgety.

Inside the Jeep, the officers found a black metal register drawer with a large amount of money as well as receipts, business cards, and paychecks from Muzita Bistro. A records check revealed the Jeep had been stolen.

An information charged El Mir with felony receipt of a stolen vehicle (count 1; § 496d), felony unlawful taking or driving a vehicle (count 2; Veh. Code, § 10851, subd. (a)), felony receiving stolen property (count 3; § 496, subd. (a)), felony second degree burglary (count 4; § 459), and misdemeanor driving under the influence of drugs (count 5; Veh. Code, § 23152, subd. (e)). In addition, the prosecution alleged El Mir had been

3

convicted two or more times of a felony (§ 1203, subd. (e)(4)) and that he had served nine prior prison terms (§§ 667.5, subd. (b), 668).

The jury acquitted El Mir of counts 1 and 2 and returned a guilty verdict on all other counts. El Mir waived his right to a jury trial on, and admitted, the prior conviction allegations. The court sentenced him to the upper term of three years for receiving stolen property, the upper term of three years for second degree burglary (stayed under § 654), and the upper term of 180 days for driving under the influence with credit for time served. In addition, the trial court imposed a one-year sentence for each of El Mir's nine prior prison terms for a total sentence of 12 years.

## DISCUSSION

El Mir contends his conviction must be reversed because the prosecutor committed *Batson/Wheeler* error by using a peremptory challenge to excuse an African-American juror based solely on the juror's race. El Mir's counsel opposed the prosecution's peremptory challenge to excuse the juror and requested that the trial court disallow the challenge. The trial court concluded that El Mir made a prima facie showing of discrimination, and the prosecutor provided race-neutral explanations for his use of the peremptory challenge against prospective juror No. 4. El Mir's argument focuses on the third step of the *Wheeler* analysis and contends the trial court erred because the reasons given by the prosecutor were pretextual and not supported by substantial evidence in the record, and violated his constitutional rights to equal protection and a jury selected from a representative cross-section of the community.

4

## I

We review the trial court's ruling on a motion under *Wheeler* and *Batson* for substantial evidence. (*People v. McDermott* (2002) 28 Cal.4th 946, 971.) The use of peremptory challenges to excuse prospective jurors solely on account of their race violates both the federal and state Constitutions. (*Batson v. Kentucky*, *supra*, 476 U.S. at p. 89; *People v. Wheeler*, *supra*, 22 Cal.3d at pp. 276-277.) A legitimate reason for peremptorily challenging a juror need not be a reason that makes sense, so long as it does not offend equal protection. (*People v. Reynoso* (2003) 31 Cal.4th 903, 924.) " 'We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses.' " (*People v. Lenix* (2008) 44 Cal.4th 602, 613-614.) However, the deferential standard is applied only if the trial court has made a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1009; *People v. Silva* (2001) 25 Cal.4th 345, 385-386.)

## II

During jury selection, in response to the trial court's questions, prospective juror No. 4 described her background and ability to be fair and impartial:

> "I'm a team leader at [a] call center. I have children. I've never
> served as a juror in the past. I don't have any friends or relatives in
> law enforcement. I have no other information, and, yes, I do believe
> I would be a fair and impartial juror."

In response to the prosecutor's additional questions, prospective juror No. 4 clarified she was a team leader for 90 people working in sales and service. In addition, although she

did not have the ability to make hiring and firing decisions, she had authority to "look at customers' accounts, read notes, decide if they need credits or not based upon what [she found] in the notes, and things of that nature."

After two rounds, the prosecutor exercised a peremptory challenge against prospective juror No. 4. El Mir's counsel subsequently requested a sidebar conference and objected to the prosecutor's peremptory challenge of prospective juror No. 4.[4] After hearing arguments from both counsel, the court determined El Mir's counsel made a prima facie showing of the presence of purposeful discrimination as to prospective juror No. 4 because the prosecutor had peremptorily challenged the only two African-Americans in the jury pool, and although the court would not have found a prima facie case as to the first juror excused due to her mannerisms and answers, it stated, "there is nothing on the face of it that would cause me to think that there would be a basis to excuse her."

The prosecutor then stated his reasons for the peremptory challenge of prospective juror No. 4. He stated the new jurors who came in during later panels were "frankly very good for the People" and that in comparison, "[ prospective juror No. 4 is] just not as good as the other jurors nor the jurors the People have coming up in the future." Further, the prosecutor stated she was his "least rated [juror] in the group remaining" because she is young--which is not a protected class--and lacks the "life experience necessary to make

---

[4]     During the sidebar conference, defense counsel expressed that she was "concerned with the fact that there were only two African-American jurors here in this potential panel and both were excused by [the prosecutor]." Although El Mir is not African-American, his counsel is.

6

difficult decisions," particularly questioning her ability to vote guilty in a criminal trial. The prosecutor pointed to the facts that (1) she has no authority to hire or fire anybody; (2) her position was more sales or service oriented; (3) she was never a juror on a criminal trial; (4) she has no friends in law enforcement; and (5) she has children, but is not married. In addition, the prosecutor considered the fact that defense counsel was out of challenges, which would allow the People to "basically hand pick the jury."

In response, El Mir's counsel argued that many of the jurors remaining at that stage were not married, and did not have children or prior jury experience. Counsel reiterated her belief that, based on prospective juror No. 4's attentiveness, level of understanding and responses, "it appears as if the reason why she was excused is because she's African[-]American."

Based on counsel's arguments, the court made initial findings and stated it would rule on the motion after further briefing:

> "I am making a finding that [the prosecution] exercised pre-empts based upon youth, which was the primary reason. I also think that the pre-empt was exercised based upon race. I don't think that was the primary reason . . . and I think under that circumstance if I were to strictly follow the law, that I would deny the motion. [¶] However . . . in the interest of justice . . . I would grant the motion."

After further argument and briefing from both counsel, the court denied El Mir's *Batson*/*Wheeler* motion.

7

We conclude the record shows the trial court made a " 'sincere and reasoned effort to evaluate' " the prosecutor's explanation for challenging prospective juror No. 4.[5] (*People v. Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1009, quoting *People v. Burgener* (2003) 29 Cal.4th 833, 864.)  Furthermore, we conclude there is substantial evidence to support the court's finding that the prosecutor's reasons for challenging prospective juror No. 4 were plausible and nondiscriminatory.  (*Lewis and Oliver*, at p. 1009.)  The primary reasons cited by the prosecutor for challenging her were her youth and lack of life experience.  The prosecutor explained prospective juror No. 4 was not only excused because of her age, but also because she does not have the life experience other potential members of the jury have that would enable her to make decisions in a difficult criminal case.  In addition, the prosecutor attempted to determine whether prospective juror No. 4's youth could be overcome by evaluating her life experiences--marital status, having the ability to hire and fire employees, her experience with drugs, prior jury experience in a criminal trial, and friends in law enforcement--that would enable her make the difficult decision to return a guilty verdict.  Consistent with the prosecutor's

---

[5]     Because the parties do not dispute the trial court's finding El Mir made a prima facie case showing prospective juror No. 4 was challenged by the prosecutor based on her race, we presume the trial court correctly decided that issue and proceeded to address the prosecutor's stated nondiscriminatory reasons and the trial court's determination of El Mir's *Batson/Wheeler* motion.

reasoning, he excused seven jurors--five because of their youth.[6] Based on these reasons, the court properly determined prospective juror No. 4 was peremptorily excused for nondiscriminatory reasons. (See *McDermott*, *supra*, 28 Cal.4th at p. 981.)

El Mir further contends the prosecutor's proffered reasons for excusing prospective juror No. 4 were a mere pretext because he did not challenge other jurors who gave similar answers, and challenged jurors who gave dissimilar answers. In support, El Mir compares the characteristics of prospective juror No. 4 to those of jurors either selected or dismissed by the prosecutor.

Evidence of comparative juror analysis, although subject to inherent limitations, must be considered when reviewing claims of error at *Wheeler/Batson's* third stage when the defendant relies on that evidence and the record is adequate to permit the comparisons. (*People v. Lenix, supra,* 44 Cal.4th at p. 622.) However, although two panelists may give similar answers, "the risk posed by one panelist might be offset by other answers, behavior, attitudes or experiences that make one juror, *on balance*, more or less desirable." (*Id.* at p. 624, italics added.) As a result, the complexity of human nature makes "a formulaic comparison of isolated responses an exceptionally poor medium to overturn a trial court's factual finding." (*Ibid*.)

El Mir discusses five reasons the prosecutor provided for excusing prospective juror No. 4 in relation to other selected jurors. However, in doing so he ignores the

---

[6] The prosecutor provided explanations as to the other two jurors excused for reasons besides youth. As to the first juror, a white male in his 40's, he was an English as a second language teacher that "had a very strange looking appearance." Regarding the second juror, a white female in her 50's, she and her husband were teachers and he was concerned because teachers are "typically not pro prosecution."

juror's ages taken into consideration with their other personal characteristics, particularly having life experience adequate to overcome youth. For example, although the prosecutor excused five prospective jurors because of youth and lack of life experience, he seated one juror similar in age to her. However, unlike prospective juror No. 4, the seated juror had life experience working at a children's emergency shelter for abused children, where she frequently deals with difficult situations when she interacts with law enforcement and abused and abandoned children. The prosecutor specified this is the type of life experience that would overcome her youth and enable her "to do this type of case."

We conclude the court properly found El Mir did not carry his burden to prove the prosecutor challenged prospective juror No. 4 for a discriminatory reason. Because there is substantial evidence to support the court's finding regarding the nondiscriminatory explanation for the prosecutor's peremptory challenge of her, we defer to the court's decision and conclude it did not err by denying El Mir's *Batson/Wheeler* motion. (See *McDermott*, *supra*, 28 Cal.4th at pp. 971, 981.)

DISPOSITION

The judgment is affirmed.


McDONALD, Acting P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.

10